**FILED**
**APRIL 6, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37267-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| J.C. M-O, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — J.C.M-O (Jose) contends on appeal that the juvenile court erred

when failing to consider his youth at sentencing. We affirm the sentence because the

Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW, already incorporates the

offender's youth into the act's sentencing scheme.

FACTS

On appeal, J.C.M-O only challenges his sentence. So we abbreviate the facts

behind the crime committed. The four boys involved in the incident leading to J.C.M-

O's conviction are minors. Thus, we use first name pseudonyms, beginning with Jose for

J.C.M-O.

Fourteen-year-old Joshua arranged to sell a cell phone to thirteen-year-old Carl, an acquaintance. To consummate the sale, Carl drove his mother's Jeep and parked several houses away from Joshua's home. Ricardo and sixteen-year-old Jose accompanied Carl.

Carl knocked on Joshua's window, after which Joshua went outside and approached the Jeep. Joshua had not known or met Jose before. Near the back of the Jeep, Joshua demonstrated to Carl and Jose that the cell phone functioned. While Joshua and Carl remained near the back of the Jeep, Jose walked to the driver's side of the vehicle to pretend to grab money to pay for the cell phone.

When Jose returned to the presence of Joshua and Carl, Jose demanded all possessions on Joshua's person. Joshua refused to comply, and Jose aimed a handgun at Joshua's face. Joshua saw a bullet in the chamber of the firearm, and he felt scared. Joshua relinquished his cell phone, belt, sweatshirt, shoes, pants, and $5. Jose punched Joshua's right cheek, thereby breaking Joshua's braces from his teeth. Jose warned Joshua not to snitch or he would kill Joshua.

## PROCEDURE

The State of Washington charged Jose, in juvenile court, with one count of robbery in the first degree. At his bench trial, Jose denied knowing Carl or accompanying him on the night of the robbery. The trial court found Jose guilty of first-degree robbery.

2

Jose had no prior felony adjudications. The trial court sentenced Jose to a juvenile standard range sentence of 129 to 260 weeks' confinement in a juvenile detention facility. At sentencing, the trial court commented:

It's a range that I have to impose by law and there is no reason not to impose that range of 129 to 260 weeks.

Report of Proceedings at 171. Defense counsel neither requested an exceptional sentence downward nor asked that the court consider Jose's age as a mitigating factor.

LAW AND ANALYSIS

Jose argues that the trial court should have considered his youth as a mitigating factor at sentencing, even though defense counsel did not request an exceptional mitigated sentence. Jose requests that this court remand to a second sentencing judge to consider his youth. Although the State responds that the sentencing court did not abuse its discretion when imposing Jose's sentence, the State suggests that this court remand the prosecution to the juvenile court so that the court might fully consider the youth of Jose. We decline to remand and affirm the sentence.

In support of his contention that the juvenile court should have considered his youth during sentencing, Jose cites only cases analyzing sentencing under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. Nevertheless, the State prosecuted Jose's case in juvenile court. Therefore, the JJA governs the prosecution and sentencing.

3

The JJA already factors the accused's youth into its sentencing scheme, so the juvenile court has no need to separately consider the offender's youth.

The JJA provides "punishment commensurate with the age, crime, and criminal history of the juvenile offender." RCW 13.40.010 (2)(d). Unlike the adult SRA, the JJA retains treatment, in addition to punishment, as one of its express goals. *State v. Sledge*, 133 Wn.2d 828, 844 n.8, 947 P.2d 1199 (1997).

RCW 13.40.0357 governs standard range sentencing for a juvenile, and states, in part:

> This schedule *must* be used for juvenile offenders. The court may select sentencing option A, B, C, or D.

(Emphasis added.) Only options A and D relate to Jose's sentencing. Option A establishes the standard range sentences trial courts may impose, depending on the severity rating of the crime. RCW 13.40.0357. "A++" is the highest rating category for a crime under the JJA, and the rating carries a standard range sentence of 129 to 260 weeks' confinement. RCW 13.40.0357. Robbery in the first degree committed by a sixteen- or seventeen-year-old is an A++ offense. RCW 13.40.0357.

Option D allows a court to impose a manifest injustice sentence outside of the standard ranges listed under option A. RCW 13.40.0357, which mentions option D, declares:

4

> If the court determines that a disposition under option A, B, or C would effectuate a manifest injustice, the court shall impose a disposition outside the standard range under RCW 13.40.160(2).

The JJA directs juvenile courts to conduct a disposition hearing, at which time they must consider whether any mitigating factors exist at sentencing. RCW 13.40.150(3)(h).

Under the SRA, a party generally cannot appeal a standard range sentence. RCW 9.94A.585(1); *State v. Brown*, 145 Wn. App. 62, 77, 184 P.3d 1284 (2008). The trial court cannot abuse its discretion as a matter of law as to the sentence's length if the trial court imposes a sentence within the standard range set by the legislature. *State v. Brown*, 145 Wn. App. at 78. These principles apply to sentencing in juvenile court. *State v. M.L.*, 114 Wn. App. 358, 361, 57 P.3d 644 (2002). A defendant may appeal his or her standard range sentence, however, if the trial court failed to follow a required procedure. *State v. M.L.*, 114 Wn. App. 358, 361 (2002). We review a standard range sentence if the sentencing court failed to exercise discretion or relied on an improper basis for refusing to impose an exceptional downward sentence. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017).

Jose relies on his youth as a factor that should have compelled the juvenile court to impose a manifest injustice sentence. In turn, he cites, among other youth sentencing decisions, *State v. Houston-Sconiers*, 188 Wn.2d 1, 8, 391 P.3d 409 (2017), in which the Washington Supreme Court recognized that juveniles are less culpable than adults for

their criminal conduct. Jose argues that the *Houston-Sconiers* court's holding requires both an adult court and a juvenile court to consider a juvenile offender's youthfulness.

We reject Jose's argument. The state Supreme Court's holding in *State v. Houston-Sconiers* only relates to cases when the State prosecutes a minor in adult court. Other decisions cited by Jose also only pertain to sentencing in adult court. The Supreme Court, in *State v. Houston-Sconiers*, wrote:

> Because "children are different" under the Eighth Amendment and hence "criminal procedure laws" must take the defendants' youthfulness into account, sentencing courts must have absolute discretion to depart as far as they want below otherwise applicable SRA ranges and/or sentencing enhancement *when sentencing juveniles in adult court, regardless of how the juvenile got there*.

*State v. Houston-Sconiers*, 188 Wn.2d at 9 (emphasis added).

Jose argues that *Houston-Sconiers* should not be read narrowly. He quotes the following passage from the 2017 decision:

> In accordance with *Miller* [*v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)], we hold that sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of *any* juvenile defendant, even in the adult criminal justice system.

*State v. Houston-Sconiers*, 188 Wn.2d at 21. Because the high court wrote that youthfulness may be considered for "any" juvenile defendant, Jose contends that youthfulness should be a mitigating factor in juvenile court, in addition to adult court. We disagree. The Washington Supreme Court also declared that sentencing courts have

discretion to sentence outside the standard range in SRA cases, "when sentencing juveniles *in adult court*." *State v. Houston-Sconiers*, 188 Wn.2d at 9 (emphasis added).

Applying the rationale behind *Houston-Sconiers* in juvenile court makes no sense. Since the JJA already reflects the youth of the offender, the juvenile court would consider the youth of the accused twice if it followed *Houston-Sconiers*. The JJA imposes significantly shorter sentences than the SRA does for offenders convicted in adult court of equivalent crimes. Additionally, the JJA imposes different standard range sentences depending on the age of the juvenile.

Jose complains that the juvenile court refused to consider the possibility of a manifest injustice sentence. Nevertheless, Jose forwards on appeal no reason for a low sentence other than his youth. If he had posited another factor before the juvenile court and reposited that factor before this court, we might agree to remand for the juvenile court to consider a downward sentence.

Jose also contends that his sentencing counsel performed ineffectively when failing to ask for an exceptional sentence due to Jose's youth. Because we rule that the juvenile court should not have separately considered Jose's youth, we conclude that his counsel did not perform below the standard of care.

CONCLUSION

We affirm J.C.M-O's sentence.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, C.J.